NOT DESIGNATED FOR PUBLICATION

No. 128,213

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GINA MARIE WHITEFORD,
*Appellant*.


MEMORANDUM OPINION

Appeal from Harvey District Court; JOE DICKINSON judge. Submitted without oral argument. Opinion filed July 2, 2026. Affirmed.

*Lindsay Kornegay*, of Kansas Appellate Defender Office, for appellant.

*Ethan C. Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.


Before ISHERWOOD, P.J., CLINE and COBLE, JJ.


ISHERWOOD, J.: Gina Marie Whiteford stands convicted of possession of methamphetamine, possession of marijuana, and possession of drug paraphernalia. She brings this appeal to challenge the district court's denial of her motion to suppress. Specifically, Whiteford claims that the arresting officer violated her constitutional rights by seizing her without reasonable suspicion. The district court found that the initial contact between Whiteford and the arresting officer constituted a voluntary encounter, and therefore the officer was not required to have reasonable suspicion to make contact with Whiteford. We have carefully reviewed the evidence adduced at the hearing for

1

Whiteford's motion to suppress and our conclusion is the same as that reached by the district court. Accordingly, the denial of Whiteford's motion to suppress is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

Newton Police Officer Skyler Hinton was on routine patrol during the early morning hours when he noticed a vehicle, with fogged up windows, pulled up to the building in a motel parking lot, so he decided to investigate further. There were additional vehicles parked close by, but none exhibited the same foggy windows. To investigate, Officer Hinton entered the lot, drove past the vehicle, and checked its registration; he learned that the vehicle was registered to a known user and seller of illegal narcotics. Hinton was also aware that illicit drug activity was a common occurrence in and around that particular motel.

Officer Hinton parked in the lot but ensured that his patrol vehicle was not positioned in such a way that he was blocking the subject vehicle in any manner; his vehicle was 10 to 15 feet away. At no point did the officer activate either the lights or sirens on his patrol vehicle.

As Officer Hinton approached the suspect vehicle, he observed the shadow of someone moving around frantically in the back seat. When he arrived next to the car, the rear passenger occupant rolled down the corresponding window. Hinton recognized the individual as Whiteford, and he knew her to be an abuser of narcotics. Hinton and Whiteford engaged in a brief, casual conversation, during which Hinton smelled the odor of fresh marijuana. Consequently, Hinton asked Whiteford to exit the vehicle.

During their conversation outside the vehicle, Officer Hinton explained to Whiteford what prompted him to initially approach the car but did not make any statements indicating the occupants were not free to leave. During his interaction with

2

Whiteford, Hinton also did not display his firearm, exhibit or employ the use of force in any way, did not raise his voice, and did not issue any commands.

Officer Hinton conducted a search of the vehicle, as well as its contents, and his investigation yielded a variety of drug paraphernalia including hypodermic needles, a spoon, plastic baggies with white residue, and a syringe that tested positive for methamphetamine. A subsequent search of Whiteford's person during the booking process at the jail revealed a marijuana pipe and marijuana.

The State ultimately charged Whiteford with possession of methamphetamine, possession of marijuana, and possession of drug paraphernalia. Prior to trial, Whiteford moved to suppress the evidence collected from the vehicle search on the grounds that it was a product of Officer Hinton's unlawful detention of her. The district court conducted a hearing on Whiteford's motion in conjunction with the preliminary hearing at which both Officer Hinton and Whiteford had the opportunity to testify. Following the admission of evidence and arguments of the parties, the district court concluded that Officer Hinton's interaction with Whiteford that morning was a voluntary encounter and did not trigger Fourth Amendment protections.

The case proceeded to a bench trial, and Whiteford was found guilty of all three drug related offenses charged against her. The district court granted her probation for a period of 12 months with an underlying prison term of 24 months for her methamphetamine conviction and a consecutive jail sentence of 12 months for her misdemeanor convictions.

Whiteford now brings her case before this court with a request that we analyze whether the district court erred when it classified her interaction with Officer Hinton as a voluntary encounter.

LEGAL ANALYSIS

Whiteford claims the district court erred in denying her motion to suppress the evidence because the arresting officer violated her constitutional rights when he seized her without reasonable suspicion. The State maintains that the initial contact between Officer Hinton and Whiteford was a voluntary encounter.

Our standard of review of a district court's decision on a motion to suppress is a bifurcated one. We review its factual findings to determine whether they are supported by substantial competent evidence, while its ultimate legal conclusion is reviewed using a de novo standard. *State v. Neighbors*, 299 Kan. 234, 240, 328 P.3d 1081 (2014). When analyzing the district court's factual findings, we do not reweigh the evidence or reassess the credibility of witnesses. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014).

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Similar language is found within section 15 of the Kansas Constitution Bill of Rights as it guarantees "protection identical to that provided under the Fourth Amendment to the United States Constitution." *State v. Morris*, 276 Kan. 11, 17, 72 P.3d 570 (2003).

Whether an individual has been seized within the meaning of the Fourth Amendment is determined by classifying the nature of the encounter in question. There are four recognized types of police-citizen encounters: (1) voluntary or consensual encounters, which are not considered seizures; (2) investigatory detentions; (3) public safety stops; and (4) arrests. See *State v. Phillips*, 49 Kan. App. 2d 775, 783, 315 P.3d 887 (2013).

This court has reasoned that the delineation between a voluntary encounter and an investigatory detention emerges through an assessment of the totality of the circumstances. *State v. Young*, 37 Kan. App. 2d 700, 704, 157 P.3d 644 (2007). While both variations involve contact between a law enforcement officer and a citizen that is typically initiated by a law enforcement officer, the distinguishing feature of the voluntary encounter is that the citizen is always free to leave or terminate the interaction. *State v. McKeown*, 249 Kan. 506, 509, 819 P.2d 644 (1991).

Fourth Amendment protections are not triggered simply because a law enforcement officer makes contact with a citizen in a public place and inquires whether they are willing to answer questions. *Florida v. Royer*, 460 U.S. 491, 497, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983). Rather, an encounter between a citizen and a law enforcement officer that occurs in a public place is considered voluntary provided that a reasonable person would feel free to decline the officer's requests for information or otherwise disengage from the interaction. *Young*, 37 Kan. App. 2d at 704.

Voluntary encounters are not classified as seizures and do not mandate that the officer be able to articulate reasonable suspicion of criminal activity before making contact with citizens. Conversely, a person is seized when there is a show of authority that, when all circumstances surrounding the incident are taken into account, communicates to a reasonable person that they are not free to leave. Thus, the person then feels compelled to submit to the officer's show of authority. *State v. Morris*, 276 Kan. 11, 18-19, 72 P.3d 570 (2003). A seizure requires the officer to have reasonable suspicion of criminal activity. *Young*, 37 Kan. App. 2d at 704.

To aid in the classification process, the Kansas Supreme Court identified those factors which are indicative of a seizure. They include the activation of lights or sirens, verbal commands, a display of weapons, and impeding a citizen's direction of travel or ability to end the encounter. *Morris*, 276 Kan. at 20. Other factors supporting a seizure

include the presence of more than one officer and a display of force through either physical contact by the officer or their use of a commanding tone of voice. *State v. Lee*, 283 Kan. 771, 775, 156 P.3d 1284 (2007).

Once a voluntary encounter transitions into an investigatory detention, it is mandatory that the law enforcement officer possess "'knowledge of facts giving rise to a reasonable and articulable suspicion that the defendant had committed, was committing, or was about to commit a crime.' *Morris*, 276 Kan. at 17." *State v. McGinnis*, 40 Kan. App. 2d 620, 624-25, 194 P.3d 46 (2008). Here, after listening to the testimony from both Officer Hinton and Whiteford, the district court ultimately determined that the initial encounter between the two was a voluntary encounter. From our review of the record, we are satisfied that the district court's factual determination was supported by the requisite substantial competent evidence.

We recognize that distinct discrepancies exist at certain points between Whiteford's and Officer Hinton's testimonies. Even so, the district court's ruling essentially tracks Hinton's account and thereby reflects an implicit credibility determination against Whiteford. See *State v. Walker*, No. 117,909, 2018 WL 3077089, at *2 (Kan. App. 2018) (unpublished opinion) (district court's comments in bench ruling amount to implicit credibility determination); *State v. Cheatham*, No. 106,413, 2012 WL 4678522, at *2 (Kan. App. 2012) (unpublished opinion) (appellate court infers credibility determination based on district court's factual findings comporting with one witness' account of relevant events rather than conflicting account from second witness). We are required by the standard of review governing our analysis of the issue to review the evidentiary record through that lens. See *Reiss*, 299 Kan. at 296 (in reviewing district court's factual findings, we do not reweigh evidence or assess credibility of witnesses).

Turning to our de novo review of the district court's ultimate legal conclusion, we agree with the district court that the totality of the circumstances support the conclusion

6

that the initial encounter between Officer Hinton and Whiteford was voluntary. See *Neighbors*, 299 Kan. at 240. The analysis of similar facts led to a similar outcome in *McGinnis*. In that case, Atchison County Deputy Sheriff Bryan Clark responded to reports that a possible stolen vehicle was partially submerged in the Missouri River, near the mouth of Independence Creek. While en route to that location, Clark observed a vehicle traveling north on a county road and ultimately turning into a driveway that provided access to Independence Creek. The area was used for parking by people who visited the creek to fish. Clark observed the vehicle as it pulled over and stopped along the driveway.

Clark followed the vehicle into the driveway because it had a Missouri license plate, like the vehicle reported stolen. Upon entering the driveway, Clark did not activate any of his emergency equipment and parked roughly two or three car lengths behind the suspect vehicle. By the time Clark exited his patrol car, the driver of the other vehicle, later identified as McGinnis, was standing at the bank of the creek and looking in the direction of the stolen car. When Clark passed by McGinnis' vehicle, he observed a 12-pack of beer in the front seat. Clark extended a cordial greeting to McGinnis and inquired what he was doing. McGinnis said he was scoping out a potentially fruitful fishing spot. Clark asked McGinnis whether he knew anything about the car submerged in the creek, and McGinnis said no. As the two chatted, Clark detected the distinct odor of alcohol on McGinnis' breath, and he noted that McGinnis also had bloodshot eyes and intermittently slurred his speech. Clark inquired whether McGinnis had been drinking, and McGinnis admitted that he had consumed two or three drinks. Clark then asked McGinnis to perform various field sobriety tests. McGinnis consented and failed, resulting in his arrest for DUI. Upon searching McGinnis' vehicle incident to that arrest, Clark discovered an open container of beer. McGinnis subsequently submitted to a blood test, and it revealed a blood alcohol concentration of 0.12. *McGinnis*, 40 Kan. App. 2d at 621-22.

In addressing whether the initial contact between Clark and McGinnis was voluntary, this court noted that Clark was the only law enforcement officer involved in the encounter and parked his patrol vehicle two or three car lengths behind McGinnis' car in such a way so as not to impede those attempting to leave the area. Clark did not activate his emergency lights when he exited his patrol vehicle and did not brandish any weapons. The evidence established that Clark maintained a normal tone of voice and did not command McGinnis to stop or to answer any questions. At no point did Clark convey to McGinnis, either implicitly or explicitly, that he was being detained against his will. Viewing the case objectively, McGinnis was free to leave and would have been well within his right to decline to answer Clark's questions. Under the totality of the circumstances, the initial encounter between Clark and McGinnis was voluntary. *McGinnis*, 40 Kan. App. 2d at 627-28.

Whiteford relies primarily, if not exclusively, on *State v. Andrade-Reyes*, 309 Kan. 1048, 1057, 442 P.3d 111 (2019), for supportive comparison. Our Supreme Court concluded that the initial encounter in that case constituted a seizure rather than a voluntary encounter.

The factual foundation established that just after midnight, two law enforcement officers observed a car, legally parked in a dark parking lot, with two individuals inside. The officers approached the vehicle and directed the beam of their flashlights inside. Andrade-Reyes, who was in the car, reached down toward the floorboard and then sat upright with his hands clenched and held in front of him. One of the officers inquired what was in Andrade-Reyes' hands. Andrade-Reyes did not answer or open his hands. He eventually moved one hand, dropped something on the ground, then promptly opened the hand to show the officer it was empty. Undeterred, the officer then asked what Andrade-Reyes had in his other hand and then ordered him to open it. Andrade-Reyes complied and a baggie of cocaine fell from his hand. Therein lies the key distinction in that case—

Andrade-Reyes was subjected to repeated requests and was ultimately ordered to open his hands.

Accordingly, we find that Whiteford's case shares greater similarities with *McGinnis* than *Andrade-Reyes*. By way of refresher, Officer Hinton was the only law enforcement officer involved in the encounter. He did not activate any of his emergency equipment and once parked, Hinton did not position his patrol vehicle as a blockade or otherwise impede the path of travel should the vehicle's occupants desire to leave. Hinton approached the suspect vehicle on foot in a public place and did not brandish any weapon. He used a conversational tone when he engaged with Whiteford and did not issue any commands to her. There is no indication from the record before us that Hinton did anything to communicate to Whiteford that she was detained involuntarily. This body of evidence is akin to that which enabled this court to conclude in *McGinnis* that an objectively reasonable person in that situation would have felt free to leave and could have declined to answer any questions posed by the law enforcement officer. 40 Kan. App. 2d at 627-28. Thus, the same outcome is warranted. Whiteford was not unlawfully detained, and the district court did not err in denying her motion to suppress.

Affirmed.